UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                                                                             Cr. No. 10-3161 JCH

JAVIER TORRES,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's *Motion to Dismiss Counts One, Two, Three, and Four of the Superseding Indictment or in the Alternative to Suppress Evidence* (Doc. 61) and *Motion to Suppress* (Doc. 62). On June 14, 2011, the Court held an evidentiary hearing on the motion, at which Defendant Javier Torres ("Torres") was present and represented by Kenneth Del Valle. Michael D. Nammar and Nathan Lickvarcik represented the United States. After considering the testimony offered into evidence at the hearing, the arguments of counsel, and the briefs filed by both parties, the Court concludes that both motions should be denied.

## FACTS

For the purposes of this motion, the Court makes the following factual findings. On June 4, 2008, while at the Eastern New Mexico Medical Center investigating another matter, Roswell police officer (then-Detective) Miguel Lopez spotted Defendant Torres and his girlfriend, Katherine Oropesa, in the waiting area. Detective Lopez testified that he recognized Oropesa from a prior encounter and Torres from police booking photographs; he also knew the two were romantically involved.

Having heard a fellow officer mention the previous week that he intended to get an arrest warrant for Torres, Lopez went to his car to conduct a warrant check, which confirmed that Torres had an active arrest warrant out of Roswell magistrate court. Lopez concedes that he was not informed of the charge on the warrant (which was for marijuana possession), but testified that he believed that "someone . . . had mentioned something to the effect that it was possibly related to some type of shooting." (Tr. at 8:6-8:8). Lopez waited in the parking lot for Torres and Oropesa to leave the emergency room.

Torres and Oropesa eventually emerged and began walking towards their vehicle. Lopez then drove up beside them and called out, "Stop. Police." He estimates he was 10-15 feet behind the couple in his car at the time he called out. Oropesa immediately stopped walking; Torres, however, hastened towards his vehicle and did not look back. Torres entered the driver's side of a 2002 Chevrolet Impala, and Lopez pulled up directly behind him and exited his police vehicle. As he did so, Lopez stared into the rear window of the Impala and saw Torres moving around in the driver's seat, where he appeared to Lopez to be hiding something under the passenger seat or between the front seats. As he approached the driver's side window, Lopez saw Torres leaning toward the space between the front seats. Lopez testified that it was bright outside at the time, and that the windows of the Impala were not dark.

Lopez ordered a compliant Torres out of his car, as another police officer, Pete Hernandez, arrived on the scene. However, when Lopez subsequently ordered Torres to put his hands behind his back, Torres reached into his pocket and attempted unsuccessfully to pass a wad of $1530 in cash in different denominations to Oropesa. Lopez testified that, in his experience, possession of such a wad of cash was consistent with frequent small narcotics sales. Lopez intervened, collected the cash, and handcuffed Torres. He then passed custody of Torres

to Officer Hernandez.

Lopez then undertook to search the vehicle, which he testified that he understood from his training that he was empowered to do, as a search incident to a lawful arrest. After entering the Impala, Lopez saw a clear plastic bag of what appeared to be a rocky white substance, consistent with methamphetamine or cocaine, sitting between the front seat and center console. Lopez did not remove the bag from the car. He then secured the vehicle and had it towed to the Roswell Police Department.

The following day, June 5, 2008, Lopez executed the search warrant, and recovered the bag of apparent contraband, a loaded Ruger pistol under the passenger seat, and a loaded Keltec pistol in the trunk. A lab report later confirmed that the substance found in Torres' car was 2.8 grams of methamphetamine. The evidence seized from Torres' car on June 5, 2008, forms the basis for counts I-IV of the Superseding Indictment.[1]

## CONCLUSIONS OF LAW

The facts of this case implicate both "search incident to arrest" and "motor vehicle exception" federal law principles, both of which mandate denial of Torres' motion.

---

[1] Torres has already prevailed on a motion to suppress the same evidence in connection with felony drug possession charges brought against him in New Mexico State court. On November 19, 2008, District Court Judge Ralph D. Shamas found that the bag of methamphetamine was not seen by Lopez until he had already commenced searching Torres' vehicle, and thus, that all evidence seized in the case was fruit of the poisonous tree. Because the outcome of Torres' state-court motion turned on the fact that New Mexico law requires "a particularized showing of exigent circumstances" – a higher burden than the federal "probable cause" standard – in order to effect a warrantless search of an automobile, the Court rejects Torres' invitation to apply the State court's logic to the instant motion. *See State v. Bomboy*, 144 N.M. 151, 152-153 (N.M. 2008).

**I.     Vehicle Search Incident to Arrest**

As an initial matter, the Court concludes that Lopez' June 4, 2008 search of Torres' vehicle was conducted incident to Torres' lawful arrest on an outstanding warrant.  The order of crucial events at issue is as follows: (1) Lopez learned of the warrant for Torres' arrest, but not the charge; (2) Lopez identified himself as a police officer and ordered Torres to stop; (3) Torres disregarded the order, entered his car and immediately began moving around inside; (4) upon being escorted from his vehicle, Torres attempted to pass a wad of cash to his companion; (5) Lopez handcuffed Torres; (6) Lopez accessed Torres' vehicle; (7) following his entry into the vehicle, Lopez saw the bag of contraband in plain view.

The Supreme Court revisited the standard for vehicle searches incident to arrest – and strikingly reversed course – in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), a case that bears some factual similarities to this one.  *Gant* involved police officers who followed a visitor to a drug house and, after arresting him for an unrelated traffic offense, searched his car incident to the arrest and located a bag of cocaine.  The Supreme Court held that the search was unreasonable under the Fourth Amendment on the grounds that the "search incident to arrest" exception to the Fourth Amendment's warrant requirement "does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.* at 1714.  Further, the Court found that while "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle," those circumstances were not present in *Gant*, where the defendant was arrested for an offense for which no relevant evidence could be found in his vehicle. *Id.*  Nevertheless, the Court took care to point out that the "vehicle search incident to arrest" exception at issue in *Gant* is not the only exception to the

4

warrant requirement, and that other "established exceptions . . . authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Id*. at 1722.  The question of whether any of the other established exceptions apply to the search at issue here will be taken up in the next section.

It is clear the exception at issue in *Gant* did not authorize Detective Lopez' search of Torres' vehicle after Torres was secured and his vehicle was out of his immediate control.  Here, as in *Gant*, there was no reason for the arresting officer to believe that evidence of the arrest could be found in Torres' vehicle.  In fact, Lopez admitted that he did not know or ask about the charge on the warrant – only that he suspected (erroneously) that it in some way related to a shooting incident.

The Court's analysis, however, does not end there, as the Tenth Circuit has repeatedly applied the "good-faith exception" to searches made in reasonable reliance on pre-*Gant* Circuit case law.  In *U.S. v. McCane*, 573 F.3d 1037 (10th Cir. 2009), the court affirmed denial of a defendant's motion to suppress a firearm found in his car pursuant to a warrantless search made after his arrest for an unrelated traffic violation.  The court acknowledged that the case was factually nearly identical to *Gant*, which was decided while *McCane* was pending on appeal, but noted that, pre-*Gant*, Tenth Circuit precedent dictated that, where a defendant was "arrested on the basis of an outstanding warrant, and handcuffed in the patrol car at the time of the search of his vehicle," the search would be authorized "without regard to the fact that the nature of the offense for which he was arrested." *Id.* at 1041, quoting *U.S. v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000).  The Tenth Circuit held that the good-faith exception to the exclusionary rule applies where a police officer reasonably and in good faith relied "upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme

5

Court decision," finding that an officer thus situated "has not engaged in misconduct." *Id.* at 1044.

The Tenth Circuit invoked the "good-faith exception" again in *U.S. v. Davis*, 590 F.3d 847 (10th Cir. 2009). In that case, the defendant, a convicted felon, had already been arrested for public intoxication and restrained prior to the warrantless search of his vehicle, which turned up a firearm that was illegally in his possession. Responding to the defendant's argument that the good-faith exception to the exclusionary rule should not apply to pre-*Gant* vehicle searches, the court noted that it had recently held in *McCane* "that the good-faith exception to the exclusionary rule applies when an officer acts in reasonable reliance upon our settled case law that is later made unconstitutional by the Supreme Court. As in *McCane*, the search in this case was wholly consistent with and supported by the court's precedent prior to *Gant*." *Id*. at 848-49

Less than a week after the Court's evidentiary hearing on the instant motion, the U.S. Supreme Court validated the Tenth Circuit's approach in applying the good-faith exception to uphold a vehicle search made two years before it handed down its opinion in *Gant*. *See Davis v. United States,* No. 09-11328, at 2011 U.S. LEXIS 4560 (June 16, 2011). The court noted that, while "the search turned out to be unconstitutional under *Gant*, all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way," *id.* at *19, and concluded that "all that exclusion would deter in this case is conscientious police work." *Id.* at *21. "[W]hen binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances." *Id.* (quotation and marks omitted). See also United States v. Soza,

6

Case 2:10-cr-03161-JCH   Document 69   Filed 07/29/11   Page 7 of 8

2011 U.S. App. LEXIS 13884, at *4-*5 (10th Cir., July 7, 2011) (officer's search of secured arrestee's vehicle "was permissible under binding circuit precedent at the time it occurred . . . [so that] the district court correctly denied [defendant's] motion to suppress") (citing *Davis*, No. 09-11328, at *6; *McCane*, 573 F.3d. at 1044-45).

Like the searches at issue in *McCane* and *Davis,* the Court finds that Detective Lopez' search of Torres' vehicle was made incident to a lawful arrest in strict compliance with then-binding Circuit law.  Thus, the Court concludes that the evidence obtained as a result of Lopez' initial search of the vehicle and later search upon obtaining a search warrant was gathered lawfully and should not be suppressed.

**II.**     **The Motor Vehicle Exception**

Moreover, even if the good-faith exception did not apply and the search of Torres' vehicle was not a  lawful search incident to arrest under *Gant*, the Court finds that it was nevertheless authorized under the "motor vehicle exception" set forth in *United States v. Ross*, 456 U.S. 798, 820-21 (1982).  Indeed, the Supreme Court specifically stated in *Gant* that *Ross* remained in force in "allow[ing] searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Gant*, 129 S. Ct. at 1722.  *Ross* involved a warrantless search of a vehicle suspected as a situs of drug sales, which first turned up an illegal pistol – for which the driver was arrested, interrupting the search  – and, after the driver was secured and the search continued, turned up the narcotics the driver later sought to suppress.  456 U.S at 801.  The Supreme Court upheld the constitutionality of the search, holding that the "scope of a warrantless search of an automobile . . .is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 824.  *See also U.S. v. Polly,* 630 F.3d 991, 999 (10th Cir. 2011) (finding that *Gant* did not authorize a

7

search of arrestee's vehicle after arrestee was secured and vehicle was out of his immediate control, but that *Ross* nevertheless authorized the search because there was "probable cause to believe [the] vehicle contain[ed] evidence of criminal activity.").

The record supports the conclusion that Detective Lopez had probable cause to believe that evidence of criminal activity – specifically of narcotics sales – was in Torres' vehicle. After being ordered to stop in the vicinity of his vehicle by a police officer, Torres ignored the command and hastened to enter the vehicle, where he began moving around suspiciously between the front seats. He then resisted arrest long enough to attempt to pass a wad of cash in different denominations – possession of which was consistent with the sale of small amounts of narcotics, in the arresting officer's experience – to Ms. Oropesa. The Court finds Torres' behavior gave Lopez probable cause to believe that evidence of criminal activity could be found in the front seats of the vehicle. Therefore, the Court finds that the "motor vehicle exception" to the Fourth Amendment's warrant requirement applies, and that the search was valid on this additional ground.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's *Motion to Dismiss Counts One, Two, Three, and Four of the Superseding Indictment or in the Alternative to Suppress Evidence* (Doc. 61) and *Motion to Suppress* (Doc. 62) are DENIED.

_____
**UNITED STATES DISTRICT JUDGE**